UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GREGORY J. McDONALD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 05-69-B-W |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from cardiovascular disease, cervical-spine disease, sleep apnea and mental-health problems (an anxiety disorder), is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the medical evidence established that the plaintiff had

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on November 29, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

cardiovascular disease, an impairment that was severe but did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, Record at 25; that he lacked the residual functional capacity ("RFC") to lift and carry more than twenty pounds or more than ten pounds on a regular basis, Finding 5, *id*.; that his capacity for the full range of light work was diminished by his inability to perform tasks requiring climbing ropes, ladders or scaffolding; overhead work; cold environments; exposure to respiratory irritants; or more than occasional squatting, kneeling or crawling, Finding 7, *id*.; that, based on an exertional capacity for light work and his age (49, a "younger individual"), educational background (high school) and work experience (semi-skilled), Rules 202.22 and 202.15 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") would direct a finding of "not disabled," Findings 8-11, *id*.; that, although he was unable to perform the full range of light work, he was capable of making an adjustment to work existing in significant numbers in the national economy, including employment as a cashier/clerk or a retail sales clerk, Finding 12, *id*. at 26; and that he therefore had not been under a disability at any time through the date of the decision, Finding 13, *id.*[2] The Appeals Council declined to review the decision, *id*. at 11-14, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health &*

[2] The decision was dated August 13, 2002. *See* Record at 26. The plaintiff was insured for purposes of SSD through at least
*(continued on next page)*

*Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff contends that (i) the administrative law judge's RFC determination was flawed, and (ii) the vocational testimony elicited at hearing does not support a Step 5 denial.  *See generally* Itemized Statement of Errors Pursuant to Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6).  I agree that, on those bases, reversal and remand is warranted.

## I.  Discussion

### A.  RFC Determination

The plaintiff challenges the administrative law judge's RFC determination on a number of fronts.  *See id*. at [2]-[6].  Of the flaws identified, by far the most troubling is the administrative law judge's failure to address, or mishandling of, certain of the plaintiff's claimed impairments.  *See id.* at [4]-[5].  These include:

1. <u>Claimed Arthritis in Neck</u>.  The plaintiff testified at hearing that he was afflicted by intermittent arm and hand numbness and that he could not lift more than fifteen pounds as a result of arthritis in his neck.  *See* Record at 54-55, 61; *see also id*. at 662-63.  As the administrative law judge noted in the body of his decision, a July 26, 2001 CT scan of the plaintiff's cervical spine revealed

---

December 31, 2002 – subsequent to that date.  *See* Finding 1, *id*. at 25.

several abnormalities, including "prominent uncinate arthropathic changes with prominent bilateral neuro-foramen narrowing at C3/4," the appearance of spinal-canal stenosis at C3/4 and a "mild midline posterior protrusion of disk material at C4/5 and C5/6." *Id*. at 22; *see also id*. at 588. Yet the administrative law judge said not a word more about the plaintiff's claimed cervical-spine arthritis, making no findings whether it even existed, let alone imposed significant work-related restrictions. *See id*. at 22-26.

The error cannot be deemed harmless, as might be the case if, for example, the administrative law judge neglected to discuss an impairment but adopted a medical expert's RFC determination that took it into account. *See, e.g., Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) ("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably ha[s] no practical effect on the outcome of the case.") (citations and internal quotation marks omitted). The Record contains four physical RFC assessments by Disability Determination Services ("DDS") non-examining consultants, one of which – that of Robert Hayes, D.O. – was implicitly adopted by the administrative law judge, *compare id*. at 23 *with id*. at 568-75, and all of which predated the July 2001 CT scan to which the administrative law judge referred, *see id.* at 145-52 (RFC assessment dated April 15, 1998 by James H. Hall, M.D.), 153-60 (RFC assessment dated August 19, 1998 by Lawrence P. Johnson, M.D.), 546-53 (RFC assessment dated February 7, 2001 by Dr. Johnson), 568-75 (RFC assessment dated June 14, 2001 by Dr. Hayes). Accordingly, none of the DDS consultants, including Dr. Hayes, was in a position to acknowledge and assess the claimed neck impairment.

The plaintiff having presented a colorable claim of neck impairment, seemingly buttressed by objective medical findings, the administrative law judge erred in choosing simply to ignore it. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive

when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted). It was incumbent on him (as a layperson) to obtain further expert guidance regarding the impact, if any, of the neck condition on work-related functioning.

2. Claimed Depression. As the plaintiff points out, *see* Statement of Errors at [5], the administrative law judge's handling of his claimed depression also leaves something to be desired. The administrative law judge did not expressly determine whether the condition existed and, if so, what restrictions, if any, it imposed. Instead, he found: "The claimant testified that he suffers from depression, although he was unable to relate how this prevented him from working." Record at 23. He included no sequelae of depression in his RFC determination. *See* Findings 5, 7, *id.* at 25.

It is a close question whether, standing alone, this error was harmless. The plaintiff testified that he could understand and carry out simple instructions, get along with co-workers, exercise judgment and respond to changes in the work routine, *see id.* at 59, which are among the basic skills needed to be able to function at work, *see* 20 C.F.R. § 404.1521(b)(3)-(6). This indeed suggests that his depression had no discernible impact on work capacity. On the other hand, he elsewhere testified that the depression made him irritable and anxious and that the pills he took for it "will put you to sleep, just about." *Id.* at 50. In addition, a DDS non-examining consultant found mild (non-severe) deficits resulting from the plaintiff's depression. *See id.* at 554-67 (Psychiatric Review Technique Form dated May 21, 2001 by Peter G. Allen, Ph.D.); *see also* 20 C.F.R. § 404.1520a(d)(1). Limiting effects of even non-severe impairments must be factored into an RFC determination when (as in this case) at least one severe impairment is found. *See, e.g.*, 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s) . . ., we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); Social Security Ruling 96-8p,

reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-8p"), at 148 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.").

Regardless whether the administrative law judge's handling of the plaintiff's claimed depression would or would not have been reversible error standing alone, the error should be corrected on remand, with the commissioner following the prescribed technique for mental impairments, *see* 20 C.F.R. § 404.1520a, and factoring in any resultant limitations (even if mild) into the plaintiff's RFC.

3. <u>Claimed Sleep Apnea</u>. The administrative law judge made contradictory pronouncements concerning this condition: In the body of his decision he judged it a severe impairment, *see* Record at 21, yet he omitted it from his official findings, *see* Finding 3, *id*. at 25. Standing alone, the error arguably would have been harmless: The Hayes RFC assessment factored in the plaintiff's claimed sleep apnea. *See id*. at 575. Yet it should be corrected on remand.[3]

### B. Vocational-Expert Testimony

As the plaintiff points out, *see* Statement of Errors at [6], the administrative law judge relied on vocational-expert testimony in concluding that he was capable of performing work existing in

---

[3] The plaintiff further argues that the administrative law judge failed to make any findings regarding his capacities to sit, walk and stand (which are critical to capacity to perform light work). *See* Statement of Errors at [5]-[6]. This particular plaint is without merit. The administrative law judge found the plaintiff capable of performing the full range of light work save as expressly limited. *See* Finding 7, Record at 25. He thus implicitly found the plaintiff capable of standing or walking, off and on, for a total of approximately six hours in an eight-hour workday and sitting for most of a workday with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. § 404.1567(b); Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings (1983-1991) ("SSR 83-
*(continued on next page)*

significant numbers in the national economy, *see* Record at 24. Thus, to the extent the vocational-testimony cannot carry the weight of the commissioner's Step 5 burden, the decision implodes.[4] For at least two independent reasons, that is the case here:

    1.    <u>Flawed RFC Determination</u>. As the plaintiff observes, *see* Statement of Errors at [6]-[7], the transmission of flawed RFC findings to a vocational expert undermines the relevance of the expert's testimony, *see, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."). As discussed above, the administrative law judge improperly ignored the plaintiff's claimed neck arthritis in crafting his RFC determination. The vocational expert's testimony hence cannot be relied upon to carry the commissioner's Step 5 burden.[5]

    2.    <u>Vague Testimony as to Numbers of Jobs</u>. The plaintiff further claims – correctly – that the vocational expert's testimony constituted insufficient evidence that jobs existed in significant numbers in the national economy that the plaintiff could perform. *See* Statement of Errors at [9]; *see also id*. at [7]-[8]. In the body of his decision, the administrative law judge stated that the plaintiff

---

10"), at 29.

[4] As the plaintiff posits, *see* Statement of Errors at [6], and as counsel for the commissioner acknowledged at oral argument, in this case the commissioner cannot simply fall back on the Grid. The administrative law judge acknowledged that "[s]trict application" of the Grid was not possible because "the claimant has non-exertional limitations that narrow the range of work he is capable of performing." Record at 24.

[5] As the plaintiff notes, *see* Statement of Errors at [7], the administrative law judge misstated his age as 49 although, at the time of hearing, he was a few days shy of 52, *compare* Record at 24 & Finding 8, *id*. at 25 *with id*. at 41-42. Nonetheless, that particular error did not affect the vocational expert's testimony: He heard the plaintiff testify as to his age and was asked to "assume . . . an individual of the claimant's age[.]" *Id*. at 66. Nor, had the administrative law judge correctly stated the plaintiff's age, would the Grid have directed a finding of disability, assuming *arguendo* the correctness of the determination that the plaintiff retained the capacity to *(continued on next page)*

was capable of making a vocational adjustment to work as a retail sales clerk (of which there were approximately one million jobs in the regional economy) and a clerk/cashier (of which there were approximately 700,000 jobs in the regional economy), with more than three million of both jobs in the national economy. *See* Record at 24. However, at hearing the vocational expert had qualified his testimony regarding the numbers of those jobs available to a person with the plaintiff's particular transferable skills, stating that the number of retail-sales-clerk jobs available would be "significantly limit[ed]" and the number of cashier jobs "not quite as . . . much" but "some adjustment[.]" *Id*. at 69. He gave no testimony regarding the exact number of jobs available with those adjustments. *See id*. Even assuming *arguendo* the correctness of the commissioner's counsel's position at oral argument (for which she cited no authority) that the commissioner need not produce exact numbers at Step 5, I am persuaded by plaintiff's counsel's rejoinder that the testimony of the vocational expert was sufficiently murky that one is left to speculate that "significant" numbers remained after adjusting for transferability issues. This falls short of carrying the commissioner's burden at Step 5.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

___

perform light work. *See* Rule 202.15, Table 2 to Grid.

[6] As the plaintiff further observes, *see* Statement of Errors at [9]-[10], the vocational expert provided no codes from the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") for the two jobs cited and, in violation of Social Security Ruling 00-4p, the administrative law judge sought no clarification whether the testimony was consistent with the DOT, *see* Record at 66-71; Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 00-4p"), at 244 ("Occupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). The plaintiff does not make a persuasive case that this error had a material impact, *see* Statement of Errors at [9]-[10]; nonetheless, it should be corrected on remand.

***NOTICE***

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of November, 2005.

                                        <u>/s/ David M. Cohen</u>
                                        David M. Cohen
                                        United States Magistrate Judge